**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| CRGT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:12-cv-554 |
| ) | |
| NORTHROP GRUMMAN SYSTEMS ) | |
| CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

This matter comes before the Court on Plaintiff CRGT, Inc.'s Motion to Remand. On April 25, 2012, Plaintiff CRGT, Inc. ("CRGT") filed its Complaint in the Circuit Court of Fairfax County, Virginia, against Defendant Northrop Grumman Systems Corporation ("Northrop Grumman") for breach of contract. Northrop Grumman timely filed a Notice of Removal to this Court on May 22, 2012, contending that the case was removable pursuant to 28 U.S.C. § 1442(a)(1) (West 2011) (the "Federal Officer Removal Statute"). On June 20, 2012, CRGT filed a Motion to Remand, challenging Northrop Grumman's contention that removal was proper under that statute.

Pursuant to the Federal Officer Removal Statute, a federal court has jurisdiction over any civil action pending against "[t]he United States or any agency thereof or any officer (or

any person acting under that officer) of the United States or of any agency thereof, [sued] in an official or individual capacity, for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). Federal subject-matter jurisdiction under the Federal Officer Removal Statute is liberally construed. Arizona v. Manypenny, 451 U.S. 232, 242 (1981) ("the policy favoring [federal officer] removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).") (internal quotation omitted); Watson v. Phillip Morris Co., Inc., 551 U.S. 142, 147 (2007) (internal citation omitted) ("The words 'acting under' are broad, and this Court has made clear that [the Federal Officer Removal Statute] must be 'liberally construed.'").

To invoke federal subject-matter jurisdiction upon removal under 28 U.S.C. § 1442(a)(1), the removing party must satisfy each element of a four-part test: (1) the removing party must be a person; (2) the removing party must have acted based on the directions of a federal officer; (3) there must be a causal nexus between the plaintiff's claims and the actions the removing took under the direction of the federal officer; and (4) the removing party must be able to raise a colorable federal defense to the claims. See Mesa v. California, 489 U.S. 121, 124-25, 129-31, 134-35 (1989). The first element is undisputed.

2

As to the second element, an action is considered to be at the direction of the federal officer when the officer has "direct and detailed control" over the conduct at issue, in this case, Northrop Grumman's termination of software usage costs under CRGT's licenses. Dep't of Envtl. Prot. v. Exxon Mobil Corp., 381 F. Supp. 2d 398, 404 (D.N.J. 2005). This test is met upon a showing of "strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction.'" Fung v. Abex Corp., 816 F. Supp. 569, 572 (N.D. Cal. 1992) (internal citation omitted). Merely showing that the removing party acted under the "general auspices of federal direction" is insufficient to establish direct and detailed control. Pittsburgh Inst. Of Aeronautics v. Allegheny Cnty. Airport Auth., No. 2:07CV1638, 2008 WL 2456491, at *1 (W.D. Pa. June 16, 2008) (internal citation omitted).

Here, Northrop Grumman's challenged conduct was under direct and detailed control of a federal officer because the federal officer expressly instructed Northrop Grumman to halt the provision of services that were the object of its subcontract with CRGT. The Army Contracting Officer directly contacted Northrop Grumman about services CRGT was subcontracted to provide and ordered Northrop Grumman to "Please remove Sun and Bantu [software] usage under managed services effective 2-10-11" and "Please reduce your invoice to reflect change."

3

Northrop Grumman's need to strictly comply with this communication represents the kind of strong government intervention necessary to constitute direct and detailed action at the behest of a federal officer, and constitutes more than merely attenuated conduct under the general auspice of federal direction. Because Northrop Grumman complied with a specific dictate to cease the provision of services rendered by CRGT, its actions were based on the directions of a federal officer.

A "causal nexus" between the claims at issue and a defendant's action under color of law exists when the claims arise as a consequence of the defendant carrying out the directives of a federal officer. Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 398 (5th Cir. 1998) (citing Willingham v. Morgan, 395 U.S. 409 (1969)); see also Mitchell v. AC&S, Inc., No. 4:04CV2713, 2004 WL 3831228, at *5 (E.D. Va. Dec. 15, 2004) (a causal nexus exists when the allegations in the complaint arise directly from the actions taken under direction of a federal officer).

In this case, CRGT's claim for breach arises as a proximate consequence of the Army Contracting Officer's directive to terminate software usage under CRGT's licenses. Almost mechanically, Northrop Grumman issued termination notices to CRGT less than a month after receiving the Army's termination notices to it. Although CRGT contends that "[n]othing in the

4

Army's directive prevented Northrop from paying CRGT as it was obligated to do," the facts in this case indicate that but for the Army's decision to terminate its software usage, Northrop Grumman would have continued to honor its subcontract for those services with CRGT. That is sufficient to establish the causal nexus required for removal to this Court under the Federal Officer Removal Statute.

A "colorable" federal defense is one that is defensive, based in the application of federal laws, and stems from the removing party's duty to enforce and comply with the directives of a federal officer. See Mesa, 489 U.S. at 129-30, 133 (discussing the nature of a federal defense); Willingham, 395 U.S. at 406-07. Defenses such as sovereign immunity, official justification, and reliance on regulatory prohibitions have been deemed "colorable" federal defenses. Willingham, 395 U.S. at 409. Critically, the Court's inquiry on this issue is not whether the defense will ultimately prevail, but only whether the defense is a "colorable" one. Fung, 816 F. Supp. at 573; see Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 n. 12 (2006) ("If there is any colorable claim that an action is precluded . . . the district court can keep the case for adjudication . . . .").

Here, Northrop Grumman asserts a colorable federal defense of official justification because Northrop Grumman avers that it

5

cannot be liable to CRGT if the Army Contracting Officer properly terminated the CRGT licenses. Northrop Grumman sets forth facts that its contract with the Army is subject to a clause provided within the Federal Acquisition Regulation, 48 C.F.R. § 52.249-2 (2006), which permits the government to terminate a contract for convenience, and additionally that its subcontract with CRGT incorporates that provision by reference. Whether Northrop Grumman's assertions about the subcontract are eventually declared meritorious is irrelevant at this stage, what matters is whether Northrop Grumman has set forth plausible facts that advance a colorable defense of official justification. Because Northrop Grumman's plausible assertions, if true, would render it an innocent intermediary and preclude CRGT's action for breach, Northrop Grumman has advanced a colorable federal defense.

For the foregoing reasons, Northrop Grumman properly invokes this Court's subject-matter jurisdiction under the Federal Officer Removal Statute and it is hereby

ORDERED that Plaintiff's Motion to Remand is DENIED.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
August 28, 2012

6